**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.M.-1, K.M.-2, and R.M.**

**No. 23-426** (Boone County CC-03-2022-JA-9, CC-03-2022-JA-10, and CC-03-2022-JA-47)

## MEMORANDUM DECISION

Petitioner Father E.M.[1] appeals the Circuit Court of Boone County's June 5, 2023, order terminating his parental, custodial, and guardianship rights to the children, arguing that the circuit court adjudicated him in the absence of clear and convincing evidence.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In February 2022, the DHS filed a petition alleging that the home in which the children lived was in deplorable condition and K.M.-1 often had lice, infections, and overall poor hygiene. The petition noted that a Child Protective Services case was previously opened and an in-home safety plan was implemented in October 2021. The petition also alleged that the petitioner's brother, who lived in the home, was arrested for sexually abusing K.M.-1 after confessing to law enforcement. Further, the petition alleged that the parents knew about the sexual abuse and failed to protect the child.

Beginning in June 2022, the court held a series of adjudicatory hearings culminating in a final hearing in December 2022, at which the court adjudicated the petitioner of abusing and

---

[1] The petitioner appears by counsel Lauren Thompson. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Deputy Attorney General Steven R. Compton. Counsel Allison K. Huson appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two children share the same initials, we refer to them as K.M.-1 and K.M.-2.

neglecting the children.[3] Witnesses testified that K.M.-1 and K.M.-2's hygiene was routinely poor, and the home was consistently dirty, infested with rodents and insects, and smelled of marijuana. Notably, the petitioner testified that he continually used marijuana in the home and was aware that the children were at the home with the mother, who slept most of the day. He also admitted knowing that his brother, who was arrested for sexually abusing K.M.-1, was present in the home with the children. The petitioner explained that he noticed a change in his brother and K.M.-1's relationship, but he denied having knowledge of any sexual abuse. The West Virginia State Trooper who investigated the sexual abuse allegations testified, recounting his conversation with the petitioner and the mother where the mother expressed suspicion regarding the petitioner's brother's relationship with K.M.-1. The trooper further testified that the petitioner claimed to have confronted his brother about the abuse and that, later in the investigation, the brother admitted to sexual misconduct towards the child. The therapist who met with K.M.-1 testified that the then-five-year-old child made multiple disclosures of sexual abuse at the hands of the petitioner's brother and stated that "everybody knew" about the abuse. In consideration of the evidence, the court found that the conditions of the home and K.M.-1 and K.M.-2's poor hygiene constituted neglect. The court further found by clear and convincing evidence that the petitioner and the mother knew of the sexual abuse but "turned a blind eye," constituting abuse. Thus, the court adjudicated the petitioner and the mother of abusing and neglecting the children. Given that the petitioner's lone assignment of error challenges his adjudication, it is sufficient to note that the court terminated the petitioner's parental, custodial, and guardianship rights following a dispositional hearing in April 2023. It is from the dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that he was improperly adjudicated as an abusing parent because he did not know that his brother was sexually abusing K.M.-1. Pursuant to West Virginia Code § 49-4-601(i), "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing [or] neglecting." The statute further requires that "[t]he findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." *Id*. Moreover, an "abused child" is one who, in relevant part, is harmed or threatened by "[a] parent . . . who . . . knowingly allows another person to inflict[] physical injury or mental or emotional injury[] upon the child or another child in the home." W. Va. Code § 49-1-201(1)(A).

Critically, the petitioner's assertion that he was unaware of the sexual abuse in the home is contrary to K.M.-1's disclosures and the testimony of numerous witnesses, including testimony from a law enforcement officer who stated that the petitioner claimed to have confronted his brother about the sexual abuse. Further, even if we accept the petitioner's position that he did not

---

[3] R.M. was born on July 8, 2022. Thus, the DHS filed an amended petition on July 11, 2022, alleging drug use and overall poor conditions in the home.

[4] The mother's parental, custodial, and guardianship rights were also terminated. The permanency plan is adoption in the current placement.

know that the abuse was occurring, "[t]he term 'knowingly' as used in [West Virginia Code § 49-1-201(1)(A)] does not require that a parent actually be present at the time the abuse occurs, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred." Syl. Pt. 7, *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Based on ample testimony, including K.M.-1's repeated disclosures of abuse and statement that "everybody knew," the circuit court found that the petitioner knew of the abuse but "turned a blind eye." The record supports the circuit court's determination that the petitioner knew or should have known the abuse was occurring; thus, the petitioner was properly adjudicated as an abusing parent and he is entitled to no relief.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 5, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: September 24, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[5] In the petitioner's sole assignment of error, he claims that following his purportedly erroneous adjudication, "each subsequent decision against [him] and his rights to parent and contact his children was erroneous." Because we conclude that the circuit court properly adjudicated the petitioner as an abusive parent, there is no jurisdictional defect affecting the proceedings below. *See In re K.L.*, 247 W. Va. 657, 666, 885 S.E.2d 595, 604 (2022) ("[P]roper adjudication is a jurisdictional prerequisite to continuation of the proceedings." (citation omitted)). Furthermore, the petitioner does not challenge his adjudication for neglect based upon the deplorable condition of the home and the children's poor hygiene. Thus, even assuming, arguendo, that the petitioner was improperly adjudicated for failing to protect the children from sexual abuse, he would still be entitled to no relief as there were additional proper grounds for adjudication.